Our final case of the morning is Benner v. Carlton. Mr. Kinley. Yes. Good morning, Your Honors. May it please the Court. I'm John Kinley, here on behalf of the appellant Mark Benner. Judge Mattias hit the nail on the head in this case when he asked in dissent in the Indiana Court of Appeals, quote, How does one exert a professional relationship, especially one that no longer exists? His answer, to a person of ordinary intelligence, I believe this is unclear. And indeed it is. Mr. Kinley, let me ask you to focus on the standard under 28 U.S.C. 2254 D.1. And ask you to identify the Supreme Court precedent that requires reversal here beyond reasonable dispute. Yes, Your Honor. The Supreme Court set out the standards and it basically sets forth the standard that we're familiar with of the arbitrary enforcement or fair notice. We're all familiar with the general standard for unconstitutional vagueness. There's a fair amount of play in the joints in that standard. So the question is, and I have immense respect for Judge Mattias and for the other members of the Indiana Appellate Court and Supreme Court who have looked at this case, what Supreme Court precedent from the Supreme Court of the United States tells us this was not just wrong, but unreasonably wrong? I understand the question. And I would certainly consider that. And I would direct or cite Watley v. Zateki. Obviously that's a Seventh Circuit case, but that was a case— because the statute says decisions of the Supreme Court and courts' appeals that have issued collateral review based on their own decisions get summarily reversed. So let's deal with Judge Hamilton's question, which is my question, too. What decision of the Supreme Court makes it pellucid that Indiana's decision here is mistaken? There is not a case that's directly analogous to this that I can point to that one could show fits the facts of the situation exactly. I referenced Watley v. Zateki because there is a discussion of this very issue there of is there Supreme Court precedent directly on point? And in that case, while I don't have the exact language, it was cited to the U.S. Supreme Court cases that basically— U.S. Supreme Court cases that say they don't have to be exactly on point. No, they don't have to be exact. We're asking you for the best one. The one that makes it clear to any reasonable lawyer that a mistake has been made. And, you know, we—again, we have the Seventh Circuit cases. I understand the court doesn't want to— It's not the court doesn't want to. You're right. It's that the statute forbids it. I understand. As far as the best one, the one that's most analogous in terms of the U.S. Supreme Court that fits these—the facts of this case closest, actually, unfortunately, I believe Recordhead, the Seventh Circuit case, may cite a Supreme Court case that would be fairly analogous. I don't have the precise Supreme Court case that I could point to as being most analogous to these facts. If you don't, you don't. Yes, you're right. Right. But I think Recordhead from the Seventh Circuit did cite U.S. Supreme Court precedent, and that dealt with—and, in fact, in fact, there was a discussion in the U.S. Supreme Court about this exact situation of these factors when you have this list of factors. And it would be—obviously, it would have behoved me to have that case. It is cited in either Levis v. Levis or Recordhead, but it was— Counsel, let me give you a concrete example. My example is the Sherman Antitrust Act. No contract combination or conspiracy in restraint of trade. It's awfully hard to figure out what that means. The Supreme Court has spent 132 years trying to figure out what that means. And yet, when it was challenged as unconstitutionally vague, that challenge was rejected. Is the Indiana statute worse in this respect than the Sherman Antitrust Act? I can't compare—I'm not in a position to compare it to the Sherman Antitrust Act. It seems to me to know what vagueness doctrine really does. We have to think about the statutes that have been contested and sustained. The Sherman Antitrust Act is one of them. I'll give you another personal favorite of mine. The statute making it a crime to mail any firearm capable of being concealed on the person. And how big a firearm you can conceal depends not only on how big you are, but what you're wearing. The Ninth Circuit held it unconstitutionally vague, and the Supreme Court reversed. Is this Indiana statute worse than that statute? I think it is. To any person, ordinary person of ordinary intelligence, it doesn't make sense to talk about exerting a professional relationship that no longer exists. What about the district court's example of the letter of recommendation after employment? I think there—and I think it's important in looking at this statute to see that it actually doesn't prohibit a person who is in a professional relationship from having a sexual relationship at the very same time. So there was, you know, in the trial, discussion, you know, and evidence presented whether, okay, when they were engaging in a sexual relationship, were there workouts, were there discussions of scholarships, etc. These are things that arguably might be connected with a professional relationship. And yet, this statute doesn't prohibit a person who is actually in a professional relationship from simultaneously engaging in a sexual relationship. And so the question about, you know, the possibility of a letter of recommendation, you know, that may go along with these same kinds of activities. It also may, you know, the Indiana legislature easily could have defined child seduction to mean if you are or have ever been in a professional relationship and left it at that. Well, the statute says has or had, correct? Right, has or had. They could have left it at that, and in fact, a different part of the statute that deals with a child care worker does exactly that. If you are a child care worker and you engage in a sexual relationship at the same time, you know, that's it, that's a violation of the child seduction statute. Here, the legislature very clearly said that it's not enough just to have a professional relationship. You also have to have evidence to convict a person of a crime that the person exerted that professional relationship somehow. It's also not enough, and I think this goes to a lot of what the district court was theorizing, it's not enough to say that the person was in a position to may exert. You know, that's problem number two on subsection 11. A person who has or had a professional relationship, two, may exert undue influence, and then three is uses or exerts the person's professional relationship. So it wasn't enough when the district court was talking about all the things that a person could do. That's not enough. We have your position, Mr. Kindley. Thank you. Thank you. Okay. Mr. Banks. Thank you, and good morning, Your Honors. My name is Tyler Banks, representing the respondent, Jesse Carlton, and may it please the Court, Mr. Benner's request for habeas relief should be denied because he has failed to show that the state court unreasonably applied federal vagueness law. The Indiana Court of Appeals uncontroversially held that an ordinary person in Mr. Benner's circumstances would have known that his conduct fell within the child seduction statute. How is it uncontroversial since you got a dissent in the Court of Appeals and at least one vote to grant transfer? Maybe that's not the best characterization, Judge Hamilton. That's not the legal standard, but let's not call it uncontroversial. I agree with you, Your Honor. I misspoke. But if we look at the as-applied challenge which is required in this context, the facts here show that Mr. Benner would have known looking at the statute that his conduct fell within its prohibition. What about on June 30th? On June... June 30th of 13. Correct. So on June 30th of 13, he would have looked at the statute and his conduct would have been legal. And that changed July 1st when the legislature now expanded the scope of the statute to say not only are we concerned about adults in positions of potential power discrepancies having sex with 16- or 17-year-old children, but we're also worried about them using or exerting those prior professional relationships to leverage, to wield those relationships, to continue them into sexual congress. And that's exactly what happened here. But the state court decision did exactly what... the state court did exactly what it was supposed to do under existing vagueness law. In fact, you know, I think that Judge Hamilton, you pointed out, vagueness analysis has a lot of play in the joints, as you put it, and so when we have doctrines, federal doctrines that have a lot of play in the joints, application under Section 2254 is even broader. If the Supreme Court were to review the constitutionality of its void for vagueness doctrine, it would hold it unconstitutional as vague. That, of course, creates a problem for people like us. That is a fun or philosophical exercise. Yes. Unless the court has any further questions, I'd like to affirm the denial of habeas. What was the sentence imposed on Mr. Benner? The sentence imposed was a suspended five-year sentence. I believe a year and a half was home detention. And he's still under probation? I believe he's still under probation. He's still under a registry requirement as well. How long does that registry requirement last? I believe it was a ten-year requirement, so we're around halfway. I checked on that, and it's now left my memory, Your Honor. Can you give us a sense from the trial as to the defense? Was it statutorily grounded? Was it arguing with regard to past employment relationship, past professional relationship? I think that the argument really was focused on the use or exertion language. There wasn't a lot of denying that there was a former professional relationship, and there was no denial that the sexual contact had occurred. And the jury was actually instructed exactly on the factors that appeared in the statute. And I think that was most of the basis of the defense in the trial court. Thank you. Thank you very much, Your Honors. Thank you very much. The case is taken under advisement, and the court will be in recess.